## CARPENTER v. BAY CONCRETE INDUSTRIES, Inc., et al.
No. X-2472.

Industrial Commission.

January 6, 1960.

---

C. J. Hardee of Hardee & Ott, Tampa, for the claimant.

E. O. Palermo and Calvin A. Pope of Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for the employer and insurance carrier.

PHILLIP L. KNOWLES, Deputy Commissioner.

A hearing was conducted by the undersigned deputy commissioner at Tampa on October 2, 1959. After hearing the evidence presented by the parties the undersigned finds —

That this commission has jurisdiction of the parties and the subject matter of this cause.

That claimant, William Carpenter, suffered an injury by accident arising out of and in the course of his employment with Bay Concrete Industries, Inc., on December 13, 1958. Following his injury the employer's carrier furnished the claimant medical treatment for a fracture of the right clavicle, and an injury in the area over the right subdeltoid bursa of the right shoulder, by Dr. J. J. Ruskin. Although Dr. Ruskin is not a member of the American Board of Orthopedic Surgery he represents himself as an orthopedist and does a substantial amount of work in the orthopedic field. Claimant was treated by Dr. Ruskin through February 4, 1959, at which time he became dissatisfied with his treatment and went for treatment to Dr. Eugene J. Cornett, a medical doctor in general practice. Dr. Ruskin never discharged claimant from treatment, or rated him as to his final disability; claimant was then treated by Dr. Cornett through April 21, 1959, at which time he discharged him from treatment with a permanent partial disability rating of fifty-three per cent of the right shoulder. It is to be noted that the disability rating was based on a shoulder rating rather than a body as a whole rating.

Following the receipt of the final report of Dr. Cornett the carrier herein began paying claimant compensation for permanent disability and on September 16, 1959, filed a petition alleging that the claimant, following final treatment by Dr. Cornett, had refused to submit to an examination by a qualified orthopedist to determine the nature and extent of his disability, and requested an order requiring claimant to submit to an examination by an orthopedist of the employer and/or carrier's choice.

At the hearing held on October 2, 1959, it was claimant's position that he had been injured, treated, and rated on a permanent basis to his satisfaction; that he had filed no claim and had no controversy with the carrier, and that consequently the commission has no jurisdiction to order him to submit to a medical examination solely for the purpose of determining his disability. It was the carrier's position that claimant had received an orthopedic injury, but had been treated and rated by Dr. Cornett, a general practitioner; that the carrier should be entitled to an examination by an orthopedist to determine whether claimant has reached maximum medical improvement, and if so, the amount of permanent partial disability on an orthopedic basis; that upon claimant's refusal to return to Dr. Ruskin he was offered an examination by any orthopedist in the city of Tampa.

Pursuant to the provisions of the Workmen's Compensation Law, and more particularly section 440.13(1), it is mandatory that the employer, or the employer's carrier, automatically fol-

lowing an injury furnish to the injured employee such remedial treatment, care, and attention as the nature of the injury, or the process of recovery may require. This contemplates that claimant shall be furnished adequate medical treatment through the date he reaches maximum medical improvement which necessarily includes a final disability rating by one competent to rate a disability — so that he may be paid the permanent partial disability compensation to which he is entitled.

In order that the rights of both the claimant and the employer, or the employer's carrier, may be protected, section 440.20(8) provides as follows — "The commission (a) may upon its own initiative at any time in a case in which payments are being made *without an award*, . . make such investigations, cause such medical examination to be made, or hold such hearings, and take such further action as it considers will properly protect the rights of all parties."

This section of the statute provides a remedy by which the claimant may see that the benefits of Workmen's Compensation Law are afforded to him. This same section also gives the employer, or the employer's carrier a remedy by which it may seek to determine what type of medical treatment claimant should have together with a remedy through which claimant's co-operation may be required. It is well known that well qualified experts, all of whom are qualified to treat and rate a particular type of condition or disability, may markedly disagree on both treatment and disability ratings. Claimant in order to secure a more persuasive examination, or medical report has only to present himself to the physician of his choice for examination, although under Workmen's Compensation Law he must pay for the examinations himself. He at least does have a method of securing the examination. Assuming the claimant's contentions were correct, then in a case where claimant had been injured and reported to have reached maximum medical recovery, or had been rated on a permanent disability basis by a physician in whom the carrier had no confidence, the employer or carrier would have no remedy to seek a determination of the issue by a more qualified expert, a situation not contemplated by section 440.20(8).

In this particular case claimant has suffered an orthopedic type injury and has been rated by a general practitioner as having a fifty-three per cent disability of the shoulder. Such a disability rating is not provided for either under the scheduled injury section of the statute, F.S. 440.15(3), or the "other causes"

section of the statute, more particularly F.S. 440.15(3)(u). With such a disability rating the claimant cannot possibly know what permanent disability compensation he is entitled to receive, and the carrier cannot be expected to determine upon what basis it should be expected to pay because the rating was not given on either a scheduled injury, or on a body as a whole basis — from which a loss of wage-earning capacity can reasonably be determined.

It is, therefore, the order of the undersigned deputy commissioner —

1. That claimant report to Dr. Eugene Maxwell, orthopedist, for examination for the purpose of determining his permanent physical impairment on a body as a whole basis.

2. That the examination be at the expense of the carrier herein, and that copies of the medical report be submitted to all interested parties.